UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X    Case No.:

MATTHEW RIVERA, Individually, and for all others
similarly situated,

                                Plaintiff(s),

      -against-

THE CITY OF NEW YORK, ERIC L. ADAMS,
MAYOR OF NEW YORK CITY IN HIS OFFICIAL
CAPACITY, NEW YORK CITY DEPARTMENT OF
HEALTH AND MENTAL HYGIENE, DAVE A.
CHOKSHI, COMMISIONER OF THE NYC
DEPARTMENT OF HEALTH AND MENTAL
HYGIENE IN HIS OFFICIAL CAPACITY,
CONSOLIDATED EDISON COMPANY OF NEW
YORK, INC., and UTILITY WORKERS UNION OF
AMERICA, AFL-CIO, LOCAL UNION NO. 1-2,

                                Defendant(s).

-------------------------------------------------------------------X

**VERIFIED COMPLAINT**

**JURY TRIAL DEMANDED**

# JOHN A. WEBER IV, ESQ.
## LAW FIRM OF VAUGHN, WEBER & PRAKOPE, P.L.L.C.
### *Attorney for Plaintiffs*
### TIMOTHY B. PRAKOPE, ESQ., *co-counsel*
### ROBERT MEHRAN, JR., ESQ., *of-counsel*

## PRELIMINARY STATEMENT

This is a civil action seeking a declaratory judgment, injunctive relief, compensatory damages, and special damages as it relates to the penalty provisions of the NYC Vaccine Mandate, the Mandate itself and the Employment Policy of Defendant as it relates to the Mandate.

## COMPLAINT

1.      Plaintiff Matthew Rivera, Individually, as an Employee, as a Union Member and for all others similarly situated parties attached at Exhibit 1, (hereinafter collectively referred to as "Plaintiffs"), by his attorneys, the Law Firm of Vaughn, Weber & Prakope, PLLC, complains of

the Defendants The City of New York (hereinafter "NYC"), Eric L. Adams, mayor of New York City, in his official capacity (hereinafter "Mayor"), the Department of Health and Mental Hygiene (hereinafter "DOHMH"), Dave A. Chokshi,, commissioner of the Department of Health and Mental Hygiene, in his official capacity (hereinafter "Commissioner"), Consolidated Edison Company of New York, Inc. (hereinafter "ConEd"), and the Utility Workers Union of America, AFL-CIO, Local Union No. 1-2 (hereinafter "Union").

## **NATURE OF ACTION**

2.      This action is challenging the authority of the Defendants' in issuing Executive Orders 316 and 317 (the "NYC Mandate").  However, this is not a referendum on whether or not a person should be required to get the vaccine or whether the vaccine is safe.  Rather, it is an application concerning government overreach and, more specifically, the Executive Branch taking legislative action in unilaterally suspending and changing the penalty provisions under the New York City Administrative Code.

3.      In doing so, the former Mayor of New York in executing and Mayor Adams in continuing said NYC Mandate, exceeded authority by taking action vested solely in the Legislature's realm, violated individuals due process rights (bestowed by both the United States Constitution and New York State Constitution), mandated excessive fines and created exemptions to the NYC Mandate that were arbitrary and capricious.

4.      By such action, the NYC Mandate compelled ConEd to act as agents of the state and comply therewith and in violation of its collectively bargained contract and without the defense and protection afforded its employees through Union inaction.

5.      Given the evolving nature of COVID-19 and its ever-changing variants, infection is likely to occur regardless of whether a person is fully vaccinated and/or then taken an additional "booster" shot.  Therefore, the very problem that the NYC Mandate is attempting to solve and

prevent is no longer achieved through the means which were mandated. Even the CDC recently released a study evidencing that natural immunity gained by people who have suffered and recovered from COVID-19 Delta variant was six times more effective at preventing future infection than the vaccine[1].

6.      This action seeks injunctive and declaratory relief from New York City Executive Orders 316 and 317 along with the December 13, 2021, DOHMH order that mandates the COVID-19 vaccination for all employees working in New York City (the "NYC Mandate").

7.      The instant action and relief requested is necessary and warranted based upon continuing case law limiting enforcement of such mandates unilaterally enacted through Executive Order, and without any Legislative Action as well as the withdrawal of the Federal Vaccine Mandate as an acknowledgement of lack of Executive, unilateral authority ("OSHA Mandate").

8.      Plaintiffs are moving this Court for a temporary restraining order and preliminary and injunctive relief in view of the <u>rolling employment termination</u> dates for Plaintiffs beginning on January 18, 2022 and moving forward for noncompliance with the NYC Mandate, after which Plaintiffs will be harmed irreparably by loss of employment and professional standing.

9.      Plaintiffs are also moving this Court to restore the status quo and/or employment status, lost wages and benefits of any of Plaintiffs or similarly situated individuals, ConEd employees and ConEd Union Members.

## **PARTIES**

10.     Plaintiff, Matthew Rivera, is a resident of Nassau County, New York.

11.     Plaintiff, Matthew Rivera, is an employee of ConEd.

12.     Plaintiff, Matthew Rivera, is a Union Member of the Union.

---

1 https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm?s_cid=mm7104e1_w#contribAff

13.     There are numerous similarly situated Plaintiffs (Ex. 1).

14.     There are numerous similarly situated Plaintiffs employed by ConEd.

15.     There are numerous, similarly situated Plaintiffs who are members of the Union.

16.     The Plaintiffs are adversely affected by the NYC Mandate.

17.     The Plaintiffs will suffer imminent harm and damages if the NYC Mandate is enforced.

18.     The collective Defendants are the source and cause of the Plaintiffs' damages.

19.     Defendant, NYC, is a municipal government entity organized under the laws of the State of New York and at all times herein, Defendant NYC, was and still is an independent agency and/or municipal governmental entity operating in and for the counties of Kings, Richmond, Manhattan, Bronx and Queens.  Plaintiff is suing Defendant NYC in their official capacity.

20.     Defendant Eric L. Adams ("Mayor") is the mayor of New York City. He is responsible for promulgation and enforcement of the challenged vaccine mandate. At all pertinent times, Mayor has acted and will act under the color of state law and in his official capacity. Defendant Mayor's principal place of business is located at City Hall, New York, NY 10007.  He is sued in his official capacity.

21.     Defendant Department of Health and Mental Hygiene ("DOHMH") is a municipal government entity organized under the laws of the State of New York and at all times herein, Defendant DOHMH, was and still is an independent agency and/or municipal governmental entity operating in and for the counties of Kings, Richmond, Manhattan, Bronx and Queens. DOHMH is responsible for promulgation and enforcement of the challenged vaccine mandate. Plaintiff is suing Defendant DOHMH in their official capacity.

22.     Defendant Dave A. Chokshi ("Commissioner") is Commissioner of Health for the DOHMH.  He is responsible for promulgation and enforcement of the challenged vaccine mandate. At all pertinent times, Commissioner has acted and will act under color of state law. Defendant Commissioner's principal place of business is located at 42-09 28th Street, Queens, Long Island City, NY, 11101.  He is sued in his official capacity.

23.     Defendant Consolidated Edison Company of New York, Inc., ("ConEd") was, and still is, domestic corporation formed by and under the Laws of the State of New York with its' principle place of business located at 4 Irving Place, New York, NY 10003.  They are acting as agents of the state and enforcing the NYC Mandate and they are being sued in their official and private capacity.

24.     Defendant Utility Workers Union of America, AFL-CIO, Local Union No. 1-2, ("Union"), is the designated collective bargaining agent for the ConEd employees.  The Union negotiates and advocates on ConEd employees' behalf with NYC in the matters of policy, terms and conditions of employment, and all matters relating to ConEd employees' general welfare.  The core function of the Union is to advocate for, protect and advance the rights and interests of all ConEd employees.  The NYC Mandate applies to all the Union's members and was unilaterally implemented by the municipal Defendants.  The Union has failed ConEd members who oppose the NYC Mandate by failing to protect their Constitutional rights and negotiate terms and conditions of employment.

25.     Plaintiffs seek injunctive and declaratory relief from NYC and all Defendants in enforcement of the penalty provisions of the NYC Mandate.

26.     Plaintiffs further seek to strike down the unilaterally enacted, Executive Order, or NYC Mandate, as it is currently written, as a violation of the Federal and New York State Constitutions.

## JURISDICTION AND VENUE

27.     This action arises under the Fourteenth and Eighth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3).

28.     This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because two of the defendants reside in this District and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

29.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

30.     This Court is authorized to grant Plaintiffs' prayer for temporary, preliminary, and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

31.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

32.     This Court is requested to exercise supplemental jurisdiction with respect to Plaintiff's State Law claims pursuant to 28 U.S.C. §1367.

## NEW YORK CITY VACCINE MANDATE

33.     On December 15, 2021 Mayor Bill DeBlasio issued Emergency Executive Order No. 317 (Ex. 2) which superseded Emergency Executive Order No. 316 that was issued two days earlier on December 13, 2021 (Ex. 3).

34.    The NYC Mandate was based upon the New York City Department of Health and Mental Hygiene ("DOHMH") Order to Require COVID-19 Vaccination in the Workplace (Ex. 4) issued on December 13, 2021 by Commissioner Dave Chokshi (hereinafter "Chokshi").

35.    On January 1, 2022, incoming NYC Mayor Adams continued the NYC Mandate, which required private employers, such as ConEd, to mandate employee vaccinations or be faced with excessive fines and penalties.  In practical terms, all employees in all of the five boroughs were to be vaccinated or they would be terminated from employment.

36.    This action challenges the Emergency Executive Order No. 317 as being improper, violative of Plaintiffs' constitutional rights and clear governmental overreach, particularly in sections:

§2(b): I hereby order that, except as provided in subdivision c of this section, a covered entity shall not permit a patron, full- or part-time employee, intern, volunteer, or contractor to enter a covered premises without displaying proof of vaccination and identification bearing the same identifying information as the proof of vaccination. However, for a child under the age of 18 only proof of vaccination, and not additional identification, is required to be displayed.

§2(c): I hereby order that the following individuals are exempted from this section, and therefore may enter a covered premises without displaying proof of vaccination, provided that such individuals wear a face mask at all times except when they are consuming food or beverages:
(1) Individuals entering for a quick and limited purpose (for example, using the restroom, placing or picking up an order or service, changing clothes in a locker room, or performing necessary repairs);
(2) A nonresident perfonning artist not regularly employed by the covered entity, or a nonresident individual accompanying such a performing artist, while the performing artist or individual is in a covered premises for the purposes of such artist's performance, except that a performing artist is not required to wear a face mask while performing;
(3) A nonresident professional or college athlete/sports team that is not based in New York City (i.e., not a New York City "home team"), or a nonresident individual accompanying such professional or college athlete/sports team, who enters a covered premises as part of their regular employment for purposes of the professional or college athlete/sports team competition, except that such athlete is not required to wear a face mask while playing in a competition;

(4) An individual 5 years of age or older who enters a covered premises to participate in a school or after-school program offered by any pre-kindergarten through grade twelve public or non-public school, the Department of Youth & Community Development (DYCD), or another City agency, except that Department of Education (DOE) and charter school students participating in high risk extracurricular activities must comply with the vaccination requirements for high risk extracurricular activities as described in the relevant Order of the Commissioner of Health and Mental Hygiene Order issued on December 10, 2021;
(5) An individual who enters for the purposes of voting or, pursuant to law, assisting or accompanying a voter or observing the election; and
(6) An individual who was younger than five years of age on December 13, 2021, until 45 days after such individual's fifth birthday.

§2(k)(1): I hereby direct that any person or entity who is determined to have violated the requirements of the Key to NYC program shall be subject to a fine, penalty and forfeiture of not less than $1,000. If the person or entity is determined to have committed a subsequent violation of this section within twelve months of the initial violation for which a penalty was assessed, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $2,000. For every violation thereafter, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $5,000 if the person or entity committed the violation within twelve months of the violation for which the second penalty was assessed. This section may be enforced pursuant to sections 3.05, 3.07, or 3.11 of the Health Code and sections 558 and 562 of the Charter.

§2(k)(2): I hereby suspend: (i) Appendix 7-A of Chapter 7 of Title 24 of the Rules of the City of New York to the extent it would limit a violation of this section to be punished with a standard penalty of $1,000 or a default penalty of $2,000; and (ii) section 7 -0 8 of such Chapter 7 and section 3 .11 of the Health Code, to the extent such provisions would limit the default penalty amount that may be imposed for a violation of this section to $2,000.

## NO ADMINISTRATIVE PROCEEDINGS OR REMEDY AVAILABLE TO PLAINTIFFS

37.    This action is commenced to contest the NYC Mandate because its promulgation evaded legislative authority and violated due process protections guaranteed to Plaintiffs under the New York State and United States Constitutions.

38.    There is no vehicle provided to Plaintiffs, in the plain language of the NYC Mandate itself, to review or appeal its directives, prompting the initiation of legal action to seek the relief prayed for herein.

39.     Despite the forgoing, Plaintiffs suffer the imminent risk of harm of penalties approaching $1,818,000.00 per year with no legislative action having been taken and no avenue to appeal such a penalty.

### FACTS

### PRESIDENTIAL EXECUTIVE ORDER AND OSHA RULE

40.     On September 9, 2021, President Joseph Biden gave a national address in which he instructed the Occupational Safety and Health Administration (hereinafter "OSHA") to impose a strict COVID-19 vaccination and testing protocols on large businesses.

41.     In response to President Joseph Biden's directive, OSHA issued a Healthcare Emergency Temporary Standard (ETS) on November 5, 2021, that required businesses with more than 100 employees to force their employees to obtain a COVID-19 vaccination or face severe fines and penalties.

42.     In response to this Order, multiple businesses challenged OSHA's unlawful mandate and on January 13, 2022, the Supreme Court of the United States granted a stay of the OSHA mandate acknowledging that the power to respond to the COVID-19 pandemic lies with States and Congress, and not OSHA.

43.     Justice Gorscuh concluded that "[I]f the Court were to abide them only in more tranquil conditions, declarations of emergencies would never end and the liberties of our Constitution's separation of powers seeks to preserve would amount to little."

44.     President Joseph Biden also issued Executive Order No.: 14043 on September 9, 2021, which amounted to a presidential mandate that all federal employees consent to vaccination against COVID-19 or lose their jobs.

45.     On January 21, 2022, taking into consideration the January 13, 2022, Supreme Court Ruling granting a restraining order against OSHA, Justice Jeffrey Vincent Brown of the

United States District Court of the Southern District of Texas granted federal employee petitioners a restraining order for implementation of EO No.: 14043. (Ex. 5).

46.    On January 25, 2022, President Biden withdrew his Executive Order as an acknowledgment of its unenforceability.

47.    Despite the forgoing, and the current challenge to the NYS Governor's authority to issue unilateral Executive Orders, the NYC Mandate continues as does the ConEd policy concerning same.

## NEW YORK CITY VACCINE MANDATE AND DOHMH MANDATE

48.    On December 13, 2021 the former mayor of NYC, Bill de Blasio, and DOHMH issued further orders pursuant to the "Key to the City" program that required employees, by December 27, 2021, to provide proof of vaccination against COVID-19 to their employer before entering the workplace, and the employer must exclude from the workplace any employee who has not provided such proof [2].

49.    For the purposes of the DOHMH Order, employers, the "covered entities" include: (i) any non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City; or (ii) any self-employed individual or a sole practitioner who works at a workplace or interacts with workers or the public in the course of their business. This applies to approximately 184,000 businesses.

50.    An employee means an individual, a worker, who works in-person in New York City at a workplace. Workers includes a full- or part-time staff member, employer, employee, intern, volunteer or contractor of a covered entity, as well as a self-employed individual or a sole

---

2 https://www1.nyc.gov/office-of-the-mayor/news/807-21/mayor-de-blasio-vaccine-mandate-private-sector-workers-major-expansions-to

practitioner. There are approximately 3,753,700 private sector employees in the NYC five borough area that this order effects[3].

51.     Covered entities must maintain a copy of each worker's proof of vaccination and, if applicable, a record of reasonable accommodation.

52.     The DOHMH Order maintains that "As long as you keep the worker out of the workplace, it is your decision whether to discipline or fire such worker, or if the worker can contribute to your business while working remotely."

53.     But if a business refuses to comply, they are subject to a fine of $1,000 (for 1st offense), $2,000 (for 2nd offense) and $5,000 (for every additional offense) in escalating penalties scheme if violations persist.

54.     ConEd is a "covered entity" under the DOHMH Order.

55.     On December 13, 2021, the same day as the DOHMH Order (see Ex. 4), NYC issued Emergency Executive Order No. 316 (see Ex. 3) to follow the guidance of DOHMH's Order.

56.     On December 15, 2021, NYC issued the NYC Mandate, thereby replacing Emergency Executive Order No. 316.  NYC Mandate was issued by Mayor DeBlasio and without the legislative enactment procedures (see Ex. 2).

57.     Section 2(k)(2) of the NYC Mandate suspended the Rules of the City of New York, Title 24, Chapter 7, Appendix 7-A to permit excessive fines and penalties of standard and default variety and suspended Chapter 7, Section 7-08 and City of New York Health Code, Section 3.11 to permit excessive default penalties (see Ex. 2, pg. 6).

---

3 https://dol.ny.gov/labor-statistics-new-york-city-region

58.     The suspension of the City of New York Rules and Health Code were done without notice, authority and adverse to the Due Process protections of the United States Constitution's Fourteenth Amendment and New York State Constitution.

59.     The City of New York Rules, § 7-02 Adjudications Seeking Civil Fines sets forth that "In accordance with Sections 1041 and 1046 of the Charter, adjudicatory hearings commenced by service of a civil summons or notice of violation seeking a civil fine or monetary penalty for violations of State and local law enforced by the Department shall be conducted by the OATH Hearings Division."  (Added City Record 11/9/2018, eff. 12/9/2018).

60.     For Mandatory Fines and Penalties, § 7-03 provides, (a) for Fixed penalties, "When a monetary fine or penalty for a violation enforced by the Department is specified in the Health Code, a rule of the Department, including in Appendix 7-A of this Chapter, or in any other applicable law, a hearing officer must impose that fine or penalty if the hearing officer sustains the violation."

61.     For Other Health Code violations, subsection (b) provides that, "Fines imposed for Health Code violations that are not specified in Appendix 7-A of this Chapter or in another law or rule must be within the range provided in 24 RCNY Health Code § 3.11 or a successor provision." (Added City Record 11/9/2018, eff. 12/9/2018).

62.     Section 7-08 states that, "Pursuant to Section 1048 of the Charter, the Commissioner delegates to the OATH Trials Division authority to conduct hearings of matters pertaining to the enforcement of State and local law within the jurisdiction of the Department where an OATH administrative law judge shall make and submit recommended findings of fact, decisions, determinations and orders to the Commissioner who shall make final findings, determinations and orders in accordance with 24 RCNY Health Code Article 5 or other applicable

law. Such hearings include but are not limited to matters where a respondent must be provided

with a hearing or an opportunity to be heard and show cause why the Commissioner should not

issue an order or take other action (i) to suspend or revoke a license, permit or registration of a

business or activity whose operation or conduct is deemed detrimental to the public health; (ii) to

abate nuisances or other detrimental health conditions, including closing, padlocking and sealing

premises deemed a public nuisance; (iii) to require an entity to cease and desist from specific acts

that endanger public health; or (iv) with respect to Department employee matters pursuant to New

York Civil Service Law.  (Added City Record 11/9/2018, eff. 12/9/2018).

63.     There is no provision in the City of New York Rules, including Title 24, Chapter

7, that permits the Mayor to eliminate the OATH hearing process by executive order or by any

other means.

64.     In eliminating the OATH hearing process and any adjudication by a hearing officer

or tribunal, the NYC Mandate eliminated the Due Process protections guaranteed to Plaintiffs and

offered no administrative remedy for review or appeal.

65.     Additionally, the NYC Mandate arbitrarily and capriciously carves out exceptions

to those required to be vaccinated in order to enter a "covered entity" in §2(c) thereof.

66.     Plaintiffs were not afforded the same treatment under the NYC Mandate as

entertainers (§2(c)(2)), athletes (§2(c)(3)) or voters (§2(c)(5)) among others (see Ex. 2, pgs. 2-3).

67.     The NYC Mandate does not provide a procedural remedy for businesses or

companies like ConEd to challenge the NYC Mandate or penalties issued thereunder.

68.     While the NYC Mandate does not explicitly require ConEd to terminate its

employees, who can neither work remotely or be readily replaced, the NYC Mandate essentially

forces employers to terminate its workers or be in violation of the NYC Mandate because of the

astronomical fines and penalties that ConEd would incur by keeping them.  In essence, it is a constructive order of termination.

69.    NYC Mandate does not provide any process to request a stay or appeal of the NYC Mandate, which places businesses and their employees across New York City in jeopardy as Defendants implement and enforce the NYC Mandate.

### COUNT I:

### VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

70.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "69" above as if fully set forth herein.

71.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs' right to equal protection under the law.

72.    The NYC Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection, is not neutral, and specifically provides Plaintiffs with discriminatory and unequal treatment as compared with entertainers, athletes and voters in New York City.

73.    The NYC Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the City to treat Plaintiffs differently from similarly situated workers solely on the basis of Plaintiffs' job description.

74.    The NYC Mandate, on its face and as applied, also singles out Plaintiffs for selective treatment based upon their personal medical decisions and objections to the COVID-19 vaccines.

75.    The NYC Mandate, on its face and as applied, creates a system of classes and categories that improperly accommodates exemptions for the class of sports and entertainment

workers concerned with bodily health while denying exemption to other types of workers concerned with spiritual health above bodily health, including a majority of the Plaintiffs herein.

76.    The NYC Mandate, reversing the City's policy of only days before, arbitrarily and capriciously attempts to deny Plaintiffs and others similarly situated, the protection afforded other workers without any logical or beneficial public health reason.

77.    No logical reason is set forth as to why a performing artist would pose any less of a threat to public health safety than one of Plaintiffs would pose while in a company car for a majority of the workday.

78.    There is no rational, legitimate, or compelling interest in the NYC Mandate's application of different standards to different, similarly situated groups of workers located in NYC.

79.    The NYC Mandate, on its face and as applied, is a status-based enactment divorced from any factual context and a classification of persons undertaken for its own sake, which the Equal Protection Clause does not permit.

80.    The NYC Mandate, on its face and as applied, identifies persons by a single trait and then denies them protections across the board.  Here, the trait is job description.

81.    A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek, an exemption from the COVID-19 Vaccine Mandate, is itself a denial of equal protection of the laws in the most literal sense.

82.    The NYC Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship to Plaintiffs from violation of their rights to be treated equally to all other similarly situated persons.

83.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their rights under the Equal Protection Clause.

## COUNT II:

## VIOLATION OF THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. § 1983)

84.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "83" above as if fully set forth herein.

85.     On December 15, 2021, the NYC Mandate was issued by Mayor DeBlasio *via* Emergency Executive Order without deliberation of the legislature or legal authority conferred by any statute, rule, regulation or law conferred upon him by New York City or State.

86.     The NYC Mandate suspended New York City Rules Title 24, Chapter 7, Appendix 7-A and 7-09 and Health Code §3.11 thereby eliminating an impediment to excessively fining noncompliance by removing the usual OATH hearing required by the suspended law.

87.     The NYC Mandate is not a law and was not implemented through any legislative action.

88.     The Executive Branch unilaterally altered, suspended and/or removed codified laws without legislative action or authority to do so.

89.     NYC's Mandate took no care to implement a process for review or appeal by those persons and entity charged as a violator of the executive order.

90.     The fines imposed by the NYC Mandate at §2(k)(2) are excessive in violation of the Eight Amendment to the United States Constitution and the New York State Constitution.

91.     The issuance of the NYC Mandate by Emergency Executive Order and eliminating the OATH hearings are both violations of the Fourteenth Amendment's Due Process Clause as well as the Due Process Clause of the New York State Constitution.

## COUNT III:

## THE NYC MANDATE VIOLATES THE EXCESSIVE FINES CLAUSES OF THE EIGHTH AMENDMENT TO THE UNITED STATES CONSTITUTION

92. Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "91" above as if fully set forth herein.

NYC Mandate §2(k)(1) sets forth that,

> "I hereby direct that any person or entity who is determined to have violated the requirements of the Key to NYC program shall be subject to a fine, penalty and forfeiture of not less than $1,000.  If the person or entity is determined to have committed a subsequent violation of this section within twelve months of the initial violation for which a penalty was assessed, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $2,000.  For every violation thereafter, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $5,000 if the person or entity committed the violation within twelve months of the violation for which the second penalty was assessed.  This section may be enforced pursuant to sections 3.05, 3.07, or 3.11 of the Health Code and sections 558 and 562 of the Charter."

(See Ex. 2, pg. 6).

93. The event that triggers the fine is set forth in §2(b), which provides in pertinent part that, "…a covered entity shall not permit a patron, full- or part-time employee, intern, volunteer, or contractor to enter a covered premises without displaying proof of vaccination and identification bearing the same identifying information as the proof of vaccination." (See Ex. 2, pg. 2).

94. An employer and employee will be subject to the fines, penalties and forfeitures prescribed by §2(k)(1) for each instance an unvaccinated employee enters the workplace.  For a company like ConEd, with thousands of employees, the fines would be astronomical (see Ex. 2, pg. 6).

95. As is set forth hereinabove, Mayor DeBlasio suspended New York City Rules Title 24, Chapter 7, Appendix 7-A and 7-09 and Health Code §3.11 and instituted the penalties listed in §2(k)(1). (See Ex. 2, pg. 6).

96. Prior to the suspension of these New York City Rules and Health Codes, the maximum suspension faced for a single unvaccinated employee would be $5,000, whereas now there is no cap and the violation would add up to $1,818,000 per year for a single unvaccinated

employee.

97.     The fine or penalty is grossly disproportionate to the offense and there is no other reasonable explanation to justify the disproportionate nature of the fine or penalty other than it being promulgated to punish the noncompliant individuals who are not vaccinated and the businesses who permit their continued employment.

98.     The excessive fines are assessed to the businesses like ConEd and employees like Plaintiffs.  Due to the excessive nature of the fines, ConEd would have practically no choice but to fire unvaccinated employees and the NYC Mandate amounts to a constructive termination.

99.     NYC Mandate §2(k)(1) violates the Excessive Fines Clause of the United States Constitution for the aforementioned reasons.

## COUNT IV:

## THE NYC MANDATE VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT PROHIBITION IN THE EIGHTH AMENDMENT OF THE UNITED STATES CONSTITUTION

100.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "99" above as if fully set forth herein.

101.     NYC's Mandate, and particularly §2(k)(1) thereof, imposes unusually harsh and disproportionate penalties, both on its face and in practice that is disproportionate to the offense being impugned.

102.     The fine and penalty as described hereinabove are excessive and unlimited.  For every day that an unvaccinated worker enters a covered premises, a fine will be assessed without a cap on the number of days or the total amount of the fine.

103.     That is literally an indeterminate and limitless fine as a penalty for noncompliance.

104.     In practice, the fine and penalty assessed to the employer is akin to a constructive order to terminate all unvaccinated employees because the amount of the limitless fines are so punitive they would destroy businesses like ConEd.

105.     Based upon the inability to calculate the total fine because there is no cap set forth

therein, the NYC Mandate violates the cruel and unusual punishment prohibition of the Eighth Amendment.

## COUNT V:

## DEFENDANTS HAVE PROCEEDED WITHOUT AND IN EXCESS OF THEIR JURISDICTION

106.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "105" above as if fully set forth herein.

107.    Upon information and belief, the fundamental policy-making responsibility that should have been undertaken by the New York State Legislature was assumed by Defendants NYC, Mayor, and Commissioner, thereby violating the separation of powers doctrine.

108.    Upon information and belief, one or more the Defendants NYC, Mayor or Commissioner, stretched its or their responsibility to encompass actions taken by the NYC Mandates without authority.

109.    Upon information and belief, the New York State Legislature has not delegated to the Defendants NYC, Mayor and/or Commissioner, the specific responsibility of requiring private sector employers and/or private sector employees to mandate or require all personnel to be immunized against COVID-19 virus as a precondition to employment.

110.    There is no statutory authority compelling such private sector employers to compel all personnel to be immunized against COVID-19 virus as a precondition to employment.

111.    The NYC Mandate requiring mandatory vaccinations for all private employers and employees in New York City and New York State may only be accomplished by the State Legislature in furtherance of the State's public policy.

112.    Therefore, by issuing, enacting and enforcing the NYC Mandate, the Defendants NYC, Mayor and Commissioner, acted in excess of their jurisdiction, violated the separation of powers doctrine, acted unconstitutionally, and such actions are arbitrary, capricious, irrational and contrary to law.

## COUNT VI:

## THE UNION VIOLATED THEIR DUTY OF FAIR REPRESENTATION

113.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "112" above as if fully set forth herein.

114.    Plaintiffs brings this action under, and jurisdiction of the action is conferred on this court by virtue of, Section 301 of the Labor-Management Relations Act of 1947 (29 U.S.C.A. §185), here referred to as the Act, to recover damages for Plaintiffs' unlawful discharge by ConEd, their employer, and for breach by Union, of its duty of fair representation owing to Plaintiffs, and for reinstatement by ConEd of the Plaintiffs that were previously discharged.

115.    Plaintiffs are various employees and contractors of ConEd and its subsidiaries and affiliates.

116.    ConEd is a corporation organized and existing under the laws of the State of New York, within the territorial jurisdiction of this court.

117.    ConEd is engaged in the manufacture and sale of energy and infrastructure in interstate commerce and, at all times mentioned, was an employer in an industry affecting commerce, as defined by sections 501(1), (3) and 2(2) of the Labor-Management Relations Act (29 U.S.C.A. §§ 142(1), (3) and 152(2)), and within the meaning of Section 301 of the Act (29 U.S.C.A. § 185).

118.    Plaintiffs are and were employed by defendant ConEd and/or members of Union on December 13 and 15, 2021, and were continuously in ConEd's employ until their respective termination dates, as such dates are rolling depending on decisions for pending applications for exemptions before being unlawfully discharged by such ConEd.

119.    Defendant Union, now is, and at all times mentioned was, a labor organization representing employees in an industry affecting commerce as defined in sections 501(1), (3) and 2(5) of the Act (29 U.S.C.A. §§ 142(1), (3) and 152(5)), and within the meaning of Section 301 of the Act (29 U.S.C.A. § 185). During all times mentioned, Union was the recognized and certified

collective-bargaining representative of the bargaining unit consisting of ConEd's covered employees including Plaintiffs as per Article I of the Collectively Bargained Contract.

120.    On June 26, 2016 (the renewed collectively bargained contract was never released to the Plaintiffs), ConEd and Union entered a collective-bargaining contract covering the employees, including Plaintiffs, in the above-mentioned bargaining unit, which agreement was in force during the entire period involved here.  Both ConEd and Union have copies of the agreement, and for that reason none is attached to this complaint. The agreement was entered into by ConEd and Union for the benefit of the employees in the bargaining unit, and Plaintiffs, as members of such bargaining unit, are accordingly entitled to the benefit of the agreement and to enforce the provisions of the agreement.

121.    As appears from the agreement, Article XI, entitled "Direction of Working Forces; Fair Treatment for Employees", with reference to the Company's sole discretion to "discipline" and "discharge" employees, reads in pertinent part: "Such right and power shall not be exercised arbitrarily or unfairly as to any employee and shall not be exercised so as to violate any provision of this Contract.  No rule procedure or practice of the Management shall be contrary to any provision of this Contract."

122.    Further, Article XII of the collective-bargaining agreement, entitled "Grievances and Their Adjustment: Arbitration", establishes a procedure, culminating in binding arbitration, for the presentation, negotiation, settlement or other disposition of grievances, and expressly provides that "A Grievance is defined as any controversy, dispute or difference arising out of the meaning or application of this Contract or affecting the relationship between any employee or the Local Union and the Company."

123.    As alleged above, Plaintiffs were put on unpaid leave, discharged and/or facing discharge, been victimized by arbitrary and capricious exemption decisions by ConEd, and all while the Union did nothing to protect Plaintiff's rights.

124.    Plaintiffs desire to be reinstated to Plaintiffs' former jobs at ConEd, and alleges that

Plaintiffs are entitled to such reinstatement retroactive to the date of discharge, without any break in seniority or benefits and/or compensation.

## COUNT VII:

## THE NYC MANDATE VIOLATES DUE PROCESS CLAUSE OF THE NEW YORK STATE CONSTITUTION

125.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "124" above as if fully set forth herein.

126.    On December 15, 2021, the NYC Mandate was issued by Mayor DeBlasio *via* Emergency Executive Order without deliberation of the legislature or legal authority conferred by any statute, rule, regulation or law conferred upon him by New York City or State.

127.    The NYC Mandate suspended New York City Rules Title 24, Chapter 7, Appendix 7-A and 7-09 and Health Code §3.11 thereby eliminating an impediment to excessively fining noncompliance by removing the usual OATH hearing required by the suspended law.

128.    The NYC Mandate took no care to implement a process for review or appeal by those persons and entity charged as a violator of the executive order.

129.    The NYC Mandate was implemented without notice and without the legislature.

130.    More specifically, the penalty provision of the NYC Mandate, through its unilateral suspension, amendment and/or implementation of changes to codified provisions were done so without notice.

131.    The New York State Constitution, Article I, §6, sets forth in pertinent part that "No person shall be deprived of life, liberty or property without due process of law."

132.    The fines imposed by the NYC Mandate at §2(k)(2) are excessive in violation of Article I, §5 to the New York State Constitution.

133.    The issuance of the NYC Mandate by Emergency Executive Order and eliminating the OATH hearings are both violations of the Fourteenth Amendment's Due Process Clause as well as the Due Process Clause of the New York State Constitution.

## COUNT VIII:

## THE NYC MANDATE VIOLATES THE EXCESSIVE FINES AND CRUEL AND UNUSUAL PUNISHMNET CLAUSES OF THE NEW YORK STATE CONSTITUTION

134.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "133" above as if fully set forth herein.

NYC Mandate §2(k)(1) sets forth that,

> "I hereby direct that any person or entity who is determined to have violated the requirements of the Key to NYC program shall be subject to a fine, penalty and forfeiture of not less than $1,000.  If the person or entity is determined to have committed a subsequent violation of this section within twelve months of the initial violation for which a penalty was assessed, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $2,000.  For every violation thereafter, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $5,000 if the person or entity committed the violation within twelve months of the violation for which the second penalty was assessed.  This section may be enforced pursuant to sections 3.05, 3.07, or 3.11 of the Health Code and sections 558 and 562 of the Charter."

> (See Ex. 2, pg. 6).

135.    The event that triggers the fine is set forth in §2(b), which provides in pertinent part that, "…a covered entity shall not permit a patron, full- or part-time employee, intern, volunteer, or contractor to enter a covered premises without displaying proof of vaccination and identification bearing the same identifying information as the proof of vaccination." (See Ex. 2, pg. 2).

136.    An employer and employee will be subject to the fines, penalties and forfeitures prescribed by §2(k)(1) for each instance an unvaccinated employee enters the workplace.  For a company like ConEd, with thousands of employees, the fines would be astronomical (see Ex. 2, pg. 6).

137.    As is set forth hereinabove, Mayor DeBlasio suspended New York City Rules Title 24, Chapter 7, Appendix 7-A and 7-09 and Health Code §3.11 and instituted the penalties listed in §2(k)(1). (See Ex. 2, pg. 6).

138.    Prior to the suspension of these New York City Rules and Health Codes, the maximum suspension faced for a single unvaccinated employee would be $5,000, whereas now there is no cap and the violation would add up to $1,818,000 per year for a single unvaccinated employee.

139.    The fine or penalty is grossly disproportionate to the offense and there is no other reasonable explanation to justify the disproportionate nature of the fine or penalty other than it being promulgated to punish the noncompliant individuals who are not vaccinated and the businesses who permit their continued employment.

140.    The excessive fines are assessed to the businesses like ConEd and employees like Plaintiffs.  Due to the excessive nature of the fines, ConEd would have practically no choice but to fire unvaccinated employees and the NYC Mandate amounts to a termination order.

141.    NYC Mandate §2(k)(1) violates the Excessive Fines Clause in Article I, §5 of the New York State Constitution for the aforementioned reasons.

<u>**COUNT IX:**</u>

<u>**THE NYC MANDATE VIOLATED THE CRUEL AND UNUSUAL PUNISHMENT PROHIBITION IN THE NEW YORK STATE CONSTITUTION**</u>

142.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "141" above as if fully set forth herein.

143.    NYC's Mandate, and particularly §2(k)(1) thereof, imposes unusually harsh and disproportionate penalties, both on its face and in practice that is disproportionate to the offense being impugned.

144.    The fine and penalty as described hereinabove are excessive and unlimited.  For every day that an unvaccinated worker enters a covered premises, a fine will be assessed without

a cap on the number of days or the total amount of the fine.

145.    That is literally an indeterminate and limitless fine as a penalty for noncompliance.

146.    The New York State Constitution provides at Article I, §5 that, "Excessive bail shall not be required nor excessive fines imposed, nor shall cruel and unusual punishments be inflicted, nor shall witnesses be unreasonably detained."

147.    In practice, the fine and penalty assessed to the employer is akin to a constructive order to terminate all unvaccinated employees because the amount of the limitless fines are so punitive they would destroy businesses like ConEd.

148.    Based upon the inability to calculate the total fine because there is no cap set forth therein, the NYC Mandate violates the cruel and unusual punishment prohibition of Article I, §5.

## COUNT X:

## CONED VIOLATED THE NYC MANDATE BY DISCLOSING THE PERSONALLY IDENTIFIABLE INFORMATION OF UNVACCINATED EMPLOYEES

149.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "148" above as if fully set forth herein.

150.    On December 22, 2021, and email was sent by the Human Resources Department at ConEd to a distribution list including several members of Plaintiffs and other ConEd employees who were unvaccinated (Ex. 6).

151.    The email permitted each recipient to view the vaccination status of other recipients.

152.    The vaccination status of employees is protected medical information falling under the auspices of personally identifiable information.

153.    An email of apology was sent to the same distribution list several hours later on December 22, 2021 (Ex. 7).

154.    NYC Mandate §2(e)(3) states that "Records created or maintained pursuant to this

section shall be treated as confidential."  (See Ex. 2, pg. 3).

155.    The initial email (Ex. 6) failed to comply with §2(e)(3) of the NYC Mandate and violated the privacy rights of Plaintiffs.

156.    NYC Mandate does not contain a provision to penalize the employers such as ConEd for violations of §2(e)(3).

157.    Plaintiffs are entitled to relief based on the clear and obvious violation of their privacy rights to their personally identifiable information by ConEd.

158.    Plaintiffs suffered damages as a result of ConEd's failure to comply with the records provision of the NYC Mandate.

159.    Since that relief is not prescribed by the plain language of the NYC Mandate, Plaintiffs are seeking damages in an amount to be determined at trial.

## COUNT XI:

## CONED ACTED AS AN AGENT OF THE STATE

160.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "159" above as if fully set forth herein.

161.    The NYC Mandate is applicable and imposes fines on businesses as well as individuals.

162.    ConEd is a corporation is a corporation that conducts business within the NYC limits and is therefore subject to the NYC Mandate.

163.    In compliance with the NYC Mandate, ConEd issued a directive requiring its employees to be vaccinated or risk termination.

164.    ConEd by enforcing the NYC Mandate and its penalties are acting as an agent and extension of the state.

165.    As a result, ConEd is violating the Constitutional rights of Plaintiffs.

166.    ConEd's directive is a violation of the collectively bargained rights of Plaintiffs.

167.    As a result of ConEd's Mandate, Plaintiffs have suffered damages.

168.    Plaintiff is entitled damages in an amount to be determined at trial as a result of ConEd's policy.

### COUNT XII:

### CONED HAS BREACHED ITS LABOR AGREEMENT WITH THE UNION WHICH HARMS THE EMPLOYEES AND UNION WORKERS

169.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs "1" through "168" above as if fully set forth herein.

170.    ConEd have a ratified collectively bargained agreement governing employee work relations with ConEd.

171.    ConEd instituted its policy concerning the NYC Mandate without complying with the terms of the Collectively Bargained Contract ("Union Contract").

172.    Article II of the Union Contract is intended to protect workers from retaliation.

173.    Here, ConEd's policy retaliates against those who chose not to get vaccinated on religious, moral or other grounds.

174.    Article XII of the Union Contract calls for grievance and arbitration for workers exposed to discipline.

175.    Here, ConEd's vaccine policy does not afford Plaintiffs such a right.

176.    Here, ConEd has taken unilateral action to frustrate Plaintiffs rights under the Union Contract.

177.    Here, ConEd has taken unilateral action to frustrated Plaintiffs rights as employees.

178.    Therefore, Plaintiffs are seeking a declaratory order for ConEd to comply with the

Collectively Bargained agreement with damages to be determined at trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs respectfully pray for relief as follows as to all Counts:

A.    A temporary restraining order and/or preliminary injunction, followed by a permanent injunction, restraining and enjoining the Defendants, their officers, agents, employees, attorneys and successors in office, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the NYC Mandate.

B.    The Court is respectfully requested to declare the NYC Mandate invalid, null and void on the grounds that Defendants and each of them acted and continue to act in an arbitrary, capricious and irrational manner.

C.    That Court is respectfully requested to declare the NYC Mandate invalid, null and void on the grounds that Defendants and each of them proceeded and is about to proceed without and in excess of their jurisdiction in violating the United States Constitution and the New York State Constitution.

D.    A declaratory judgment declaring that the NYC Mandate, both on its face and as applied by Defendants, is unconstitutional, unlawful, and unenforceable in that the penalty provision of the NYC Mandate violates the Excessive Fines Clause of the Eighth Amendment.

E.    A declaratory judgment declaring that the NYC Mandate, both on its face and as applied by Defendants, is unconstitutional, unlawful, and unenforceable in that the NYC Mandate violates the Cruel and Unusual Punishment Clause of the Eighth Amendment

F.      An award of reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988.

G.      A determination that the defendant employer, ConEd, discharged plaintiff without just cause, in breach and violation of plaintiff's rights under the collective-bargaining agreement. and that defendant union breached its duty of fair representation owing to plaintiff in the processing of the grievance filed on plaintiff's discharge;

H.      Award plaintiff damages against both defendant employer and defendant union, or in such proportion between them as the court may determine to be just and proper;

I.      Order defendant employer to reinstate plaintiff in the job previously held, retroactive to the date of plaintiff's discharge, and without any breach in plaintiff's seniority or benefits; and

J.      Other and further relief as the Court deems equitable and just under the circumstances.

THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.

Dated: Mineola, New York
       February 2, 2022

Respectfully submitted,

By: _____

JOHN A. WEBER IV, ESQ.
NY BAR NO.: 4793071
LAW FIRM OF VAUGHN, WEBER & PRAKOPE
Attorney for Plaintiffs
393 Jericho Turnpike, Suite 208
Mineola, New York 11501
Tel: (516) 858-2620
Fax: (516) 858-5975
JWeber@VaughnWeberLaw.com

By: _____

TIMOTHY B. PRAKOPE, ESQ.
NY Bar No.: 4846309
LAW FIRM OF VAUGHN, WEBER & PRAKOPE
Attorney for Plaintiffs
393 Jericho Turnpike, Suite 208
Mineola, New York 11501
Tel: (516) 858-2620
Fax: (516) 858-5975
TPrakope@VaughnWebeLaw.com

## VERIFICATION

State of New York

County of Nassau SS:

I, MATTHEW RIVERA, being duly sworn, deposes and states under penalty of perjury that I am the plaintiff in the within action; I have read the foregoing

## VERIFIED COMPLAINT

and know the contents thereof; the same is true to my own knowledge, except as to the matters I believe to be true. The grounds to my belief as to all matters not stated upon my own knowledge are the materials contained in my attorneys' files and the investigation conducted by them.

MATTHEW RIVERA

Sworn to Before Me this
2 Day of FEB , 2022

Notary

MOHAMMAD RASHID RIAZ
Notary Public - State of New York
No. 01RI6320662
Qualified In Queens County
My Comm. Expires Mar. 9, 20 23