UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

MATTHEW RIVERA, *et al.*, each Individually,
and for All Others Similarly Situated,[1]

                              Plaintiffs,

        - against -

THE CITY OF NEW YORK, *et al.*,

                              Defendants.

-------------------------------------------------------x

**MEMORANDUM & ORDER**
22-CV-616 (PKC) (PK)

PAMELA K. CHEN, United States District Judge:

Plaintiffs, all of whom are current or former employees of Consolidated Edison Company of New York, Inc. ("ConEd"), bring this putative class action alleging numerous violations of the United States and New York State constitutions resulting from the City of New York's issuance and enforcement of COVID-19 vaccination mandates. (Amended Complaint ("Am. Compl."), Dkt. 13.) Before the Court is Defendants' motion to dismiss this matter for lack of subject-matter jurisdiction pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(1). (*See* Defs.' Mot. to Dismiss, ("Defs.' Mot."), Dkt. 22.) Because Plaintiffs lack standing to bring their claims and their claims are moot, Defendants' motion is granted. This action is hereby terminated.

## BACKGROUND

### I.    Procedural History

On February 2, 2022, Plaintiff Matthew Rivera, a ConEd employee, filed his initial complaint against the City of New York ("City"), New York City Mayor Eric L. Adams, then-

---

[1] The Court notes that not all of the Plaintiffs named in the Complaint submitted verification forms. Those who have not are not parties to this case.

Commissioner Dave A. Chokshi ("Commissioner") of the New York City Department of Health and Mental Hygiene (DOHMH),[2] the DOHMH, ConEd, and the Utility Workers Union of America, AFL-CIO, Local Union No. 1–2 ("Union").  (Compl., ¶¶ 19–24.)  The initial complaint, filed by Plaintiff Rivera, nominally on behalf of himself and other unnamed, similarly situated ConEd employees,[3] sought compensation[4] and a determination that ConEd had discharged Rivera without just cause because of New York City's Emergency Executive Order 317 ("EEO 317"),[5] as well as a declaratory judgment that EEO 317 was invalid on various grounds.  (Id., 28–29.)

The day after filing his initial complaint, Rivera filed an application for a temporary restraining order ("TRO") and a preliminary injunction enjoining Defendants from enforcing EEO 317.  (Dkt. 8-1.)  The Court denied that motion the next day on the grounds that the Complaint had failed to allege "specific facts" to "clearly show" that Rivera might suffer "immediate and irreparable injury, loss, or damage" as a result of EEO 317 and the Order.  (Dkt. 9, at 5 (quoting FRCP 65(b)(1)(A)).)  Specifically, the Court found "nowhere in his TRO[,] motion or affidavit, or

---

[2] Ashwin Vasan, M.D., Ph.D. was appointed as Commissioner of DOHMH effective March 2022.  (Dkt. 22, at 1 n.1.)  The Clerk of Court is respectfully directed to amend the case caption accordingly.

[3] In connection with Rivera's motion for preliminary relief, discussed *infra,* the Court found that the initial complaint failed to properly name other plaintiffs or otherwise allege a class, and construed the action as being brought solely by Rivera.  (Dkt. 9, 2/4/2022 Mem. & Order, at 1.)

[4] Rivera sought damages for an alleged violation of his "privacy rights" by ConEd.  (*See* Compl., ¶¶ 157–159 ("Plaintiffs are entitled to relief based on the clear and obvious violation of their privacy rights to their personally identifiable information by ConEd. . . .Plaintiffs suffered damages as a result of ConEd's failure to comply with the records provision of the NYC Mandate. . . .Since that relief is not prescribed by the plain language of [Executive Order 317], Plaintiffs are seeking damages in an amount to be determined at trial.").)

[5] Both the initial complaint and Amended Complaint label EEO 317 the "NYC Mandate." (Compl., ¶ 2; Am. Compl., ¶ 2.)  The Court, however, does not adopt this terminology and refers to the Executive Order throughout this opinion as EEO 317.

in his Complaint, [did] Plaintiff [Rivera] state whether": (1) he was terminated by ConEd based on his decision not to get vaccinated; (2) he "ever attempted to get a religious exemption pursuant to ConEd's policy and was denied;" and (3) he could "work, or [was] working, remotely, which, per ConEd's policy, might provide another basis for exemption from the vaccination requirement." (*Id* at 4 n.2, 4.)   The Court also noted that Rivera had not submitted any evidence that ConEd would be terminating unvaccinated employees.  (*Id.* at 4.)

On May 3, 2022, Rivera voluntarily dismissed Defendants ConEd and the Union, and moved for an extension of time to amend the initial complaint in order to add plaintiffs and allege a class action.  (Dkts. 10, 11.)  The Court granted Rivera leave to do so by June 2, 2022, and adjourned the initial conference to August 2, 2022.  (5/3/2022 Docket Order.)  On June 2, 2022, Plaintiffs filed the Amended Complaint—the operative complaint—which includes most of the claims from the original complaint and adds plaintiffs and class allegations pursuant to FRCP 23. (Am. Compl., ¶¶ 7–135, 147–57.)  Notably, the Amended Complaint does not include a "privacy rights" claim—the previous one having been made against ConEd—and does not seek damages on any other basis.  (*See generally* Am. Compl.; *id.* at 35–36 (Prayer for Relief).)  On June 16, 2022, Defendants filed, and the Court granted, a motion for an extension of time for Defendants to answer the Amended Complaint to August 5, 2022.  (Dkt. 15; 6/16/2022 Docket Order.)

On August 5, 2022, Defendants filed a pre-motion conference request in anticipation of filing a motion to dismiss.  (Dkt. 16.)  Plaintiffs failed to respond to Defendants' request (as required by the Court's Individual Rules), and the Court denied the request as unnecessary and ordered the parties to jointly propose a briefing schedule for the motion to dismiss.  (8/17/2022 Docket Order.)  A briefing schedule was set and extended once at Plaintiffs' request.  (Dkts. 17,

19; 8/24/2022 and 11/6/2022 Docket Orders.)  The instant motion to dismiss was fully briefed on December 2, 2022.  (Dkts. 20–24.)

## II.     Factual Background

### A.  Relevant NYC COVID-19 Regulations

On December 13, 2021, in response to the proliferation of the "Omicron" variant of COVID-19, the Commissioner issued an "Order . . . To Require COVID-19 Vaccination in the Workplace."[6]  (Commissioner's Order ("Order"), Dkt. 13-3, Exhibit 4.)  The Order required that "[b]eginning December 27, 2021, workers must provide proof of vaccination against COVID-19 to a covered entity before entering the workplace, and a covered entity must exclude from the workplace any worker who has not provided such proof," provided that "[n]othing in this Order shall be construed to prohibit reasonable accommodations for medical or religious reasons." (Order,  at 3, 5.)  The Order defined "covered entities" as either "a non-governmental entity that employs more than one worker in New York City or maintains a workplace in New York City" or "a self-employed individual or a sole practitioner who works at a workplace or interacts with workers or the public in the course of their business."  (*Id.* at ECF 4.)  Not covered by the Order were workers who worked from their own home and did not interact in-person with co-workers or others; workers who "enter[] the workplace for a quick and limited purpose"; and "non-City residents who are performing artists, college or professional athletes, or individuals accompanying" such performers, as provided by Emergency Executive Order 316 ("EEO 316"). (*Id.* at ECF 5.)  Under the Order, covered entities were required to maintain confidential records

_____

[6] The Commissioner cited numerous sources of authority for the Order, including Sections 556 and 558 of the New York City Charter, Section 3.01(c) and 3.01(d) of the New York City Health Code, and Sections 17-104 and 17-109 of the New York City Administrative Code.  (Order, Dkt. 13-3, at ECF 2–3.)  The Court notes that citations to "ECF" refer to the pagination generated by the Court's electronic docketing system and not the document's internal pagination.

of their employees' vaccination status, check proof of vaccination before allowing workers to enter the workplace, and affirm compliance with the policy.  (*Id.* at ECF 3–4.)  The Order took effect immediately upon issuance.  (*Id.* at ECF 5.)

 Two days later, on December 15, 2021, Mayor Bill de Blasio issued EEO 317.  (EEO 317, Dkt. 13-1, Exhibit 2.)  EEO 317 superseded EEO 316, which  Mayor de Blasio  issued on December 13, 2021.  (*Id.* at 1.)  Section 2 of EEO 317 codified the "Key to NYC" program established by Mayor de Blasio several months earlier in Emergency Executive Order 225 ("EEO 225").  (*Id.* at § 2(a); *see* Order, at ECF 2.[7])  Like the Order, the Key to NYC program required covered entities to maintain records regarding workers' vaccination status (or reasonable accommodations).  (*Id.* at §§ 2(d)–(e).)

However, EEO 317 differed from the Order in at least three crucial ways.  First, EEO 317 defined "covered entity" much more narrowly than did the Order.  Whereas a "covered entity" under the Order was any "non-governmental entity that employ[ed] more than one worker in New York . . . or maintain[ed] a workplace" in the City (Order, at ECF 2), a "covered entity" under EEO 317 was limited to entities that operated one or more "covered premises," which were defined as "[i]ndoor entertainment and recreational settings, and certain event and meeting spaces," "indoor food services," and "indoor gyms and fitness settings."  (EEO 317, at §§ 2(g)(2)–(3).)  Second, whereas the Order focused solely on employees or workers, the Key to NYC program required covered entities "not [to] permit a patron, full- or part-time employee, intern, volunteer,

---

[7] Mayor de Blasio signed Emergency Executive Order No. 225, the "Key to NYC," on August 16, 2021. City of New York, *Emergency Executive Order 225*, https://www.nyc.gov/office-of-the-mayor/news/225-001/emergency-executive-order-225 (last visited Sept. 25, 2023). EEO 225 "requires the employees, as well as patrons, of establishments providing indoor entertainment, dining, and fitness to show proof of at least one dose of an approved COVID-19 vaccine[.]" (EEO 317, at ECF 2.) EEO 316 "reissued" EEO 225, meaning that the Key to NYC remained in effect under EEO 316. (*Id.*)

or contractor to enter a covered premises without displaying proof of vaccination and identification[.]" (*Id.* at § 2(a)–(b).) And third, EEO 317 established a graduated enforcement scheme, imposing fines on any "person or entity" found to have violated the requirements of EEO 317, which were to increase for each subsequent violation within a twelve-month period. (*Id.* at §2(k)(1).)[8] EEO 317 also suspended City laws to facilitate EEO 317's enforcement scheme, specifically "(i) Appendix 7-A of Chapter 7 of Title 24 of the Rules of the City of New York[,] to the extent it would limit a violation of this section to be punished with a standard penalty of $1,000 or a default penalty of $2,000; and (ii) section 7-08 of . . . Chapter 7 and section 3.11 of the Health Code, to the extent such provisions would limit the default penalty amount that may be imposed for a violation of this section to $2,000." (*Id.* at § 2(k)(2).)

A little over a year later, on March 20, 2022, Mayor Eric Adams, Mayor de Blasio's successor, issued Emergency Executive Order 50 ("EEO 50"). (EEO 50, Dkt. 21-3, Exhibit C.) EEO 50 ended most of the Key to NYC program provisions as of 12:01 a.m. on March 7, 2022. (*Id.* at § 2(a).) For instance, EEO 50 eliminated the graduated fee enforcement scheme established in EEO 317, requiring instead that "the Fire and Police Departments, the Department of Buildings,

---

[8] Section 2(k)(1) of EEO provided for a graduated penalty as follows:

[A]ny person or entity who is determined to have violated the requirements of the Key to NYC program shall be subject to a fine, penalty and forfeiture of not less than $1,000. If the person or entity is determined to have committed a subsequent violation of this section within twelve months of the initial violation for which a penalty was assessed, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $2,000. For every violation thereafter, such person or entity shall be subject to a fine, penalty and forfeiture of not less than $5,000 if the person or entity committed the violation within twelve months of the violation for which the second penalty was assessed. This section may be enforced pursuant to sections 3.05, 3.07, or 3.11 of the Health Code and sections 558 and 562 of the Charter.

EEO 317, § 2(k)(1). (*Id.*)

the Sheriff, and other agencies as needed, . . . enforce the directives set forth in this Order in accordance with their lawful authorities." (*Id.* at § 4.)  However, EEO 50 maintained the requirement that covered entities "that had been covered by the Key to NYC program shall continue to require that a covered worker provide proof of vaccination, unless such worker has received a reasonable accommodation," and continue to maintain records of such vaccination status as described in EEO 317 Sections 2(d) and 2(e).  (*Id.* at § 3(a).)  On March 24, 2022, Mayor Adams issued Emergency Executive Order 62 ("EEO 62"), which was mostly a word-for-word restatement of EEO 50, but included additional rationale for exempting athletes and performing artists from the vaccine requirement.  (EEO 62, Dkt. 21-4, Exhibit D, at ECF 2 (noting that "actions taken to prevent [viral spread] have led to property loss and damage," the competitive disadvantage imposed on New York City's athletic teams by the vaccination mandate, and the positive economic impacts of removing the vaccination requirement).)

On October 25, 2022, the DOHMH rescinded the Order as of November 1, 2022.[9]  Thus, by November 1, 2022, EEO 317, the Key to NYC program it established, and the Order had all been rescinded and/or superseded, such that there was no COVID-19 vaccination mandate applicable to non-governmental workplaces in New York City as of November 1, 2022.

### B. The Amended Complaint[10]

---

[9] *See* New York City Bd. of Health, *Order To Rescind the Requirements for COVID-19 Vaccination in Nongovernmental Workplaces*, https://www.nyc.gov/assets/doh/downloads/pdf/covid/covid-19-vaccination-nongov-workplaces-rescinded.pdf (last visited Sept.25, 2023); *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) ("In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court, as it did here, may refer to evidence outside the pleadings.").

[10] For purposes of this Memorandum & Order, the Court assumes the truth of all non-conclusory, factual allegations contained within Plaintiff's Amended Complaint.  *Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)).

The Amended Complaint was filed on behalf of 42 ConEd employees,[11] all either members of the Union or "management employees" and living in or around New York City.  (Am. Compl., ¶¶ 1, 7–135.)  Plaintiffs allege that they were being "adversely affected by [EEO 317]" and that they "[would] suffer imminent harms and continuous damages if the enforcement of the [EEO 317] [] continued for [ConEd's] employees."  (*Id.* ¶¶ 136–37.)  Although the named Plaintiffs are all ConEd employees, Plaintiffs seek to represent two, much broader classes: (1) "[a]ll businesses and persons subject to" EEO 317; and (2) "[a]ll residents, employees, employers, and/or businesses residing in, working in, conducting business in, visiting and/or commuting through New York City" without proof of vaccination, because they were "subject to Excessive Fines . . . without due process[.]"  (*Id.* ¶ 148.)[12]

Notably, although alleging that EEO 317 was "based upon" the Order (Am. Compl., ¶ 159), Plaintiffs challenge only EEO 317 as an unconstitutional and illegal exercise of authority by Defendants, and not also the Order.  (*See id.* at 2 (Preliminary Statement: "This is a civil action seeking a declaratory judgment, as it relates to the penalty provisions of the New York City Executive Order 317 (the 'NYC Mandate') and the issuance of the Mandate itself by executive order rather than by legislative enactment."); *see also id.* ¶ 148(a) (seeking to certify a class of "[a]ll businesses and persons subject to New York's [sic] City's Executive Order 317[.]").)  Plaintiffs seek only declaratory and injunctive relief, and despite alleging that they have been

---

[11] Although not specifically alleged in the Complaint, the Court presumes that at the time of the Amended Complaint's filing, the named employees were not vaccinated, as was then required by EEO 317.

[12] The Court notes that there is a number error in the Amended Complaint such that there are two different paragraphs labeled 147, 148, and 149.  Here, the Court is referring to ¶ 148 on page 15 of the Amended Complaint.

injured by "the arbitrary enforcement of [EEO 317]," including loss of jobs and pay benefits,[13] they do not seek compensatory damages. (*Id.*, at 35–36 (Prayer for Relief).)

Plaintiffs challenge four aspects of the now-defunct EEO 317: (1) Section 2(b)'s requirement that covered entities not allow "full- or part-time employee[s] . . . or contractor[s] to enter a covered premises without displaying proof of vaccination" and matching identification; (2) Section 2(c)'s exemption of certain categories of individuals from the proof-of-vaccination requirement, including "nonresident performing artist[s] not regularly employed by the covered entity," and "nonresident professional or college athlete[s] . . . not based in New York City"; (3) Section 2(k)(1)'s imposition of fines on "any person or entity" who violated "the Key to NYC program"; and (4) Section 2(k)(2)'s suspension of Rules of New York City provisions to allow for fines to be imposed under EEO 317. (*Id.* ¶ 161.) Plaintiffs further allege that EEO 317 provided Plaintiffs "no vehicle . . . to review or appeal [EEO 317's] directives" (*Id.* ¶ 164), and in suspending Health Code Section 7-08, eliminated the Office of Administrative Trials and Hearings ("OATH") hearing process, thereby removing any "administrative remedy for review or appeal." (*Id.* ¶¶ 180–82, 185.)

Plaintiffs assert that Defendants, by promulgating and enforcing EEO 317, violated: (1) the Fourteenth Amendment Equal Protection Clause ("Count I," *Id.* ¶¶ 205–18); (2) the Fourteenth

---

[13] The Amended Complaint alleges three specific adverse actions taken by ConEd against Plaintiffs. First, Plaintiff Jose Dominguez "was placed on unpaid leave on December 27, 2021, for failure to comply with [EEO 317]," and is facing "permanent termination." (Am. Compl. ¶¶ 196–98.) Plaintiff Keith Small was informed via email by the ConEd Director of Employee and Labor Relations that he "should be fully vaccinated on or about May 5, 2022" and that "[f]ailure to comply" with the vaccine mandate "could result in administrative action and termination." (*Id.* ¶¶ 199–200.) Third, Plaintiff Troy Lecarreaux "was placed on unpaid leave for failure to comply with [EEO 317]," was notified that he would be terminated for failure to comply, and, on or about May 9, 2022, was terminated for failure to comply with EEO 317. (*Id.* ¶¶ 201–03.) The Amended Complaint alleges that "[s]everal members of Plaintiff class have suffered similar fates and will all be facing permanent termination or violation of their constitutional rights." (*Id.* ¶ 204.)

Amendment Due Process Clause ("Count II," *Id.* ¶¶ 219–26) and the Due Process Clause of the New York State Constitution,  ("Count VI," *Id.* ¶¶ 249–57); (3) the Eighth Amendment "Excessive Fines" Clause ("Count III," *Id.* ¶¶ 227–35), and the analogous clause of the New York State Constitution,  ("Count VII," *Id.* ¶¶ 258–65); (4)  the prohibitions on cruel and unusual punishment found in the Eighth Amendment of the U.S. Constitution and the analogous clause of the New York State Constitution ("Count IV," *Id.* ¶¶ 236–41; "Count VIII," *Id.* ¶¶ 266–72); and (5) the "separation of powers doctrine."  ("Count V," *Id.* ¶¶ 242–48.)

## LEGAL STANDARDS

Under FRCP12(b)(1), the Court must dismiss an action where the court lacks subject matter jurisdiction.  *See* Fed. R. Civ. P. 12(b)(1).  "A case is properly dismissed for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova*, 201 F.3d at 113 (2d Cir. 2000). "The standard for reviewing a 12(b)(1) motion to dismiss is essentially identical to the 12(b)(6) standard," *Allstate Ins. Co. v. Elzanaty*, 916 F. Supp. 2d 273, 286 (E.D.N.Y. 2013), except that "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of evidence that it exists[,]" *Makarova*, 201 F.3d at 113. Federal district courts have "original jurisdiction of all civil actions arising under the Constitution, laws or treaties of the United States," and also have jurisdiction where  diversity of citizenship exists between the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331–1332.  Absent a basis for original jurisdiction, a district court "cannot exercise supplemental jurisdiction [over a plaintiff's state law claims] unless there is first a proper basis for original federal jurisdiction." *Nowak v. Ironworkers Loc. 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir. 1996) (citing *Cushing v. Moore*, 970 F.2d 1103, 1106 (2d Cir. 1992)).  "It follows that when a district court correctly dismisses all federal claims

for lack of subject-matter jurisdiction pursuant to Rule 12(b)(1), the district court is thereby precluded from exercising supplemental jurisdiction over related state-law claims." *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 399 (2d Cir. 2017) (quotation marks and citations omitted).

"Article III of the Constitution limits federal-court jurisdiction to 'cases' and 'controversies.'" *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160 (2016) (quoting U.S. CONST., art. III, § 2); *see also Amidax Trading Grp. v. S.W.I.F.T. SCRL,* 671 F.3d 140, 145 (2d Cir. 2011) ("Under Article III of the Constitution, the jurisdiction of federal courts is limited to the resolution of 'cases' and 'controversies.'") (quoting U.S. CONST. art. III, § 2)).  The Supreme Court has "interpreted this requirement to demand that an actual controversy . . . be extant at all stages of review, not merely at the time the complaint is filed. . . .If an intervening circumstance deprives the plaintiff of a personal stake in the outcome of the lawsuit, at any point in the lawsuit, the action can no longer proceed[.]"  *Campbell-Ewald Co.*, 577 U.S. at 160–61 (internal citations and quotations omitted).  When an action or claim is dismissed pursuant to FRCP 12(b)(1), the dismissal is without prejudice.  *See Katz v. Donna Karan Co.*, 872 F.3d 114, 116 (2d Cir. 2017) ("[A] complaint must be dismissed without prejudice where the dismissal is due to the court's lack of subject matter jurisdiction.").

**I.    Standing**

To establish standing to bring an action in federal court, Plaintiffs "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct . . . and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An "injury in fact" must be "concrete and particularized, as well as actual or imminent." *Carney v. Adams*, 141 S. Ct. 493, 498 (2020) (internal quotation marks and citation omitted); *see Strubel v. Comenity Bank*, 842 F.3d 181, 188 (2d Cir. 2016).  "[A] grievance that amounts to nothing more

than an abstract and generalized harm to a citizen's interest in the proper application of the law does not count as an 'injury in fact.'"  *Carney*, 141 S. Ct. at 498 (citing *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013)).  "Moreover, a plaintiff seeking injunctive relief cannot rely only on past injury to satisfy the injury requirement but must show a likelihood of future harm."  *Harty v. Simon Prop. Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011).

## II.  Mootness

A case "becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'"  *MOAC Mall Holdings LLC v. Transform Holdco LLC*, 598 U.S. 288, 295 (2023) (quoting *Chafin v. Chafin*, 568 U.S. 165, 172 (2013)); *N.Y. State Rifle & Pistol Ass'n, Inc. v. City of New York*, 140 S. Ct. 1525, 1526 (2020) (per curiam) (holding that a claim is moot where a law was amended to give "the precise relief that [plaintiffs] requested").  "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action."  *Hassoun v. Searls*, 976 F.3d 121, 127 (2d Cir. 2020) (citation and bracket omitted).  However, if "a court can fashion *some* form of meaningful relief to award the complaining party," a case is not moot.  *Exxon Mobil Corp. v. Healey*, 28 F.4th 383, 392 (2d Cir. 2022) (internal quotation marks and citation omitted).

Exceptions to the mootness doctrine include a defendant's "voluntary cessation" of the conduct at issue, and when conduct is "capable of repetition, yet evading review."  *Cook v. Colgate Univ.*, 992 F.2d 17, 19 (2d Cir. 1993) (citing *Southern Pac. Terminal Co. v. Interstate Commerce Comm'n*, 219 U.S. 498, 515 (1911)).  With respect to the former, "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."  *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000) (internal citation and quotation marks omitted).  With

respect to the latter, "[a] dispute qualifies for [the capable-of-repetition] exception only if (1) the challenged action is in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subjected to the same action again." *Remauro v. Adams*, No. 21-CV-4553 (ARR) (TAM), 2022 WL 1525482, at *4 (internal quotation marks omitted) (quoting *United States v. Sanchez-Gomez*, 138 S. Ct. 1532, 1540 (2018)).

The voluntary cessation "exception does not apply, however, when "the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Remauro*, 2022 WL 1525482, at *3 (citing *Dark Storm Indus. LLC v. Hochul*, No. 20-CV-2725, 2021 WL 4538640, at *1 (2d Cir. Oct. 5, 2021); *see also Mhany Mgmt., Inc. v. Cnty. of Nassau*, 819 F.3d 581, 603 (2d Cir. 2016) ("The voluntary cessation of allegedly illegal activities will usually render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (citation omitted). The capable-of-repetition exception only applies in "exceptional situations." *Exxon Mobil Corp.*, 28 F.4th at 395–96. "As with the voluntary cessation exception, the 'reasonable expectation of repetition must be more than a mere physical or theoretical possibility.'" *Remauro*, 2022 WL 1525482, at *4 (quoting *Lillbask ex rel. Mauclaire v. State of Conn. Dept. of Educ.*, 397 F.3d 77, 86 (2d Cir. 2005)). Yet, "[t]he heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Friends of the Earth, Inc.*, 528 U.S. at 170.

**DISCUSSION**

Dismissal of this action is required because Plaintiffs lack standing to bring this action, and even if they had standing, their claims would be moot.

**I.     Plaintiffs Lack Standing to Challenge EEO 317**

**A.     EEO 317 Never Applied to ConEd or Plaintiffs**

Although Plaintiffs seek to invalidate EEO 317, they allege no facts showing that EEO 317, when it was in effect, applied to them, and they therefore lack standing to bring this action. As noted *supra* (Background Section II.A), EEO 317 created a vaccination mandate for workers, patrons, and others in "covered premises," which it defined as "[i]ndoor entertainment and recreational settings, and certain event and meeting spaces," "indoor food services," and "indoor gyms and fitness settings." (EEO 317, at § 2(g)(3).) Plaintiffs, who are employees of ConEd, make no allegations that they were employed by a "covered premises" under EEO 317 and therefore fail to show that they suffered or were likely to suffer, as a result of EEO 317, an "injury-in-fact" at step one of the standing inquiry. Rather, in attempting to state a claim based on EEO 317, Plaintiffs erroneously allege that "[EEO 317] . . . required private employers, such as ConEd, to mandate employee vaccinations or be faced with excessive fines and penalties," and that this mandate caused harm to Plaintiffs in the form of threatened and actual job termination by ConEd and the loss of pay benefits. (Am. Compl, ¶¶ 160, 186–95.) But a plain reading of EEO 317 shows that this allegation is demonstrably incorrect and that the putative class of ConEd employees could not have been subjected to any potential or actual harm from the enforcement of EEO 317's provisions, since ConEd itself was not subject to them. *See Remauro*, 2022 WL 1525482, at *5 ("[T]o have standing for their [constitutional] claims, the remaining plaintiffs must have been personally injured by Key to NYC's requirement that business owners who interact with the public retain proof that they have been vaccinated—for example, by being asked to show proof of

14

vaccination or by being fined for refusing to do so.").  Thus, Plaintiffs have not alleged that they suffered—or were capable of suffering—an injury-in-fact as a result of the issuance or enforcement of EEO 317.  *See, e.g., Abadi v. City of New York*, No. 22-CV-1560, 2023 WL 3295949, at *2 (2d Cir. May 8, 2023) (summary order) (affirming dismissal for lack of standing of plaintiff's challenge to the Key to NYC policy because plaintiff's alleged injury was "conjectural or hypothetical").

Thus, Plaintiffs lack standing to challenge either the issuance or enforcement of EEO 317. Since, as discussed below, the Amended Complaint solely challenges EEO 317, this case must be dismissed based on Plaintiffs' lack of standing to bring this action in federal court.

### B.      Plaintiffs Are Not Challenging the Order

As previously discussed, the Amended Complaint does not challenge the issuance or enforcement of the Order, which, unlike EEO 317, did apply to ConEd between December 13, 2021 and November 1, 2022.  However, the Court is under no "duty to "liberally construe" represented Plaintiffs' complaint—let alone "re-write it"—to infer claims based on the Order. *Davila v. Lang*, 343 F. Supp. 3d 254, 266 (S.D.N.Y. 2018) (quoting *Geldzahler v. N.Y. Med. Coll.*, 663 F. Supp. 2d 379, 387 (S.D.N.Y. 2009) (internal citations omitted)); *Karadimas v. JPMorgan Chase Bank*, No. 09-CV-589 (DLI) (RLM), 2010 WL 11626847, at *3 n.3 (E.D.N.Y. Sept. 30, 2010) (dismissing claims where plaintiff's allegations do not specify the sections of laws that were purportedly violated because "the court is under no duty to liberally construe the amended complaint, or divine causes of action on plaintiff's behalf."); *Case v. Anderson*, No. 16-CV-983 (NSR), 2017 WL 3701863, at *6 (S.D.N.Y. Aug. 25, 2017).  Indeed, there is no reason for the Court to believe that Plaintiffs intended to assert claims based on the Order.  Throughout the Amended Complaint, Plaintiffs clearly distinguish between the "NYC Mandate," i.e., EEO 317,

and the Order.  (Am. Compl., ¶¶ 158–59 ("On December 15, 2021, Mayor Bill DeBlasio [sic] issued the NYC Mandate [] which superseded Emergency Executive Order No. 316[;] . . . the NYC Mandate was based upon the DOHMH Order to Require COVID-19 Vaccination in the Workplace [] issued on December 13, 2021, by Commissioner."); *see generally id*. ¶¶ 207–72 (each count referring only to the harm caused by EEO 317 with no mention of the Order.)  Most significantly, Plaintiffs only identify and challenge specific provisions of EEO 317, which are not part of the Order, including the Key to NYC program and EEO 317's fine scheme and suspension of Appendix 7-A of Chapter 7 of Title 24 of the Rules of the City of New York.  Plaintiffs' pronouncement at the beginning of the Amended Complaint could not be clearer: "This is a civil action seeking a declaratory judgment, as it relates to the penalty provisions of the *New York City Executive Order 317* (the 'NYC Mandate') and the issuance of the Mandate itself by executive order rather than by legislative enactment."  (Am. Compl., ¶ 2 (emphasis added).)

Furthermore, even if Plaintiffs had sought to challenge the Order, they would lack standing for the same reason identified in the Court's February 4, 2022 decision denying Rivera's motion for preliminary relief, i.e., Plaintiffs still have not alleged that they ever applied for an exception pursuant to the policy.  (Dkt. 9, at 3–4.)  The Order guaranteed that "[n]othing in this Order shall be construed to prohibit reasonable accommodations for medical or religious reasons," and that the "Order shall not apply to . . . individuals who have been granted a reasonable accommodation." (Order, ¶¶ 5–6; *see id*. ¶ 2.b.iv (requiring "covered entities" to maintain records of workers who do "not submit proof of COVID-19 vaccination because of a reasonable accommodation," including the accommodation provided, basis for the accommodation, and supporting documentation provided by the worker).)  The Order also exempted individuals who worked from home and only "enter[ed] the workplace for a quick and limited purpose."  (*Id.* ¶¶ 4.d.i–ii.)  The

16

Commissioner's Guidance regarding the Order also explicitly provided that "[w]orkers who have a sincerely held religious belief (not a social or political belief), or a medical condition that prevents them from being vaccinated may apply for a reasonable accommodation" by December 27, 2021, and provided employers with a link to guidance and a checklist for employers "to process reasonable accommodation requests." (*Frequently Asked Questions for Covered Entities* (Dec. 31, 2021), https://www.nyc.gov/assets/counseltothemayor/downloads/Workplace-FAQ.pdf.)

In general, "to establish standing to challenge an allegedly unconstitutional policy, a plaintiff must submit to the challenged policy." *Jackson-Bey v. Hanslmaier*, 115 F.3d 1091, 1096 (2d Cir. 1997). Although a plaintiff might have standing where she makes a substantial showing that she did not avail herself of the existing appeal or exemption process from the challenged policy because doing so "would have been futile," here, Plaintiffs do not allege in the Amended Complaint that they availed themselves in any way of the exemptions permitted by the Order.[14] *Id.*; *Winston v. City of Syracuse*, 887 F.3d 553, 559 (2d Cir. 2018) (holding that plaintiff made substantial showing that challenging termination of her water service would have been futile where city's ordinances did not permit a hearing officer to restore water service when the bill remains unpaid, thus depriving plaintiff of relief even if her challenge was successful). Plaintiffs do not state that they sought reasonable accommodations and were denied them; that they had any reason

---

[14] Plaintiffs make only one glancing allusion to the accommodations, in their opposition to the motion to dismiss. Plaintiffs seem to intimate that standing is conferred by prospective class members who are "governed by [EEO 317]," including "residents and/or visitors forced to receive the vaccine, those who made healthcare decisions under duress to avoid unconstitutionally ordered penalties, those who were denied their religious exemption (or other exemption), those who lost their jobs and those who suffered economic harm as a result of [EEO 317]." (Pls.' Opp'n, Dkt. 24, at 8, ¶ 4.) Putting aside the fact that this allegation only references EEO 317 and is made for the first time in Plaintiffs' opposition to the motion to dismiss rather than in their pleadings, this vague, all-encompassing allusion to members of an ill-defined prospective class who might have been denied an applied-for exemption is far from an allegation that Plaintiffs sought and were denied exemptions under the Order so as to confer standing to challenge it.

to believe that applying would be futile; or, indeed, whether they might have been excepted from the vaccination policy because they did not regularly work in-person.

Thus, even assuming *arguendo* that Plaintiffs are seeking to challenge the issuance and enforcement of the Order, they would lack standing to do so based on their failure to allege that they "appl[ied] for an exemption as the policy expressly allow[ed] [them] to do," and their failure to allege that such application would have been futile. *Wade v. Univ. of Conn. Bd. Of Trs.*, 554 F. Supp. 3d 366, 377–78 (D. Conn. 2021) (no standing for plaintiff challenging her university's vaccine mandate because she failed to seek an exemption); *Iosilevich v. City of New York*, No. 21-CV-4717 (RPK) (LB), 2022 WL 19272855, at *8 (E.D.N.Y. Aug. 10, 2022) (holding that "[e]ven if [plaintiff] could show he would imminently be subject to the City's vaccine mandate[,] . . . he would still lack standing to challenge the policy as he would need to first avail himself of the exception process [] or plead facts demonstrating the futility of seeking such an exception."), *report and recommendation adopted*, *Iosilevich v. City of New York*, No. 21-CV-4717, 8/29/2022 Docket Order.

## II.    Plaintiffs' Claims Are Also Moot and No Exception to Mootness Applies

EEO 317 is no longer in effect.  It was discontinued in stages.  First, on March 7, 2022, EEO 50 phased out the graduated fine enforcement scheme but maintained the requirement that "covered premises" retain workers' vaccination records.  (EEO 50.)  Defendants note that the retention of vaccination records requirement expired with Mayor Adams's November 1, 2022 issuance of Emergency Executive Order 251 ("EEO 251"), wherein he declined to extend "the

Key to NYC private sector vaccine mandate" described in EEO 50 and as amended in EEO 62.[15] The Order was also rescinded as of November 1, 2022.

Although Plaintiffs allege that they "continue to suffer damages through lost wages and wrongful termination" (Am. Compl., at 3), they seek only injunctive and declaratory relief and "reasonable costs and expenses of this action, including a reasonable attorney's fee, in accordance with 42 U.S.C. Section 1988." (*Id.*, at 35–36 ("Prayer for Relief").)  For injunctive relief, Plaintiffs request that the Court "declare [EEO 317] invalid, null and void." (*Id.*, at 35 ¶¶ A–B.)  They also seek judgment "declaring that [EEO 317] . . . is unconstitutional, unlawful, and unenforceable" because the "penalty provision of [EEO 317] violates the Excessive Fines Clause" and the "Cruel and Unusual Punishment Clause of the Eighth Amendment." (*Id.*, at 35 ¶¶ C–D.)

Because EEO 317 has already been discontinued and the Court cannot enjoin it, Plaintiffs' claims for injunctive and declaratory relief are now moot. *See, e.g., Heyward v. City of New York*, No. 21-CV-9376 (LTS), 2023 WL 137746, at *2 (S.D.N.Y. Jan. 9, 2023) (holding that plaintiff's injunctive claims as to the Key to NYC program are moot "because those rules are no longer in effect"); *Clementine Co. LLC v. Adams,* No. 21-CV-7779, 2022 WL 4096162, at *2 (S.D.N.Y. Sept. 7, 2022) (same); *Commey v. Adams*, No. 22-CV-0018 (RA), 2022 WL 3286548, at *3 (S.D.N.Y. Aug. 11, 2022) (same); *Exxon Mobil Corp.*, 28 F.4th at 394–95 (explaining that "a request for a  declaratory judgment as to a past violation cannot itself establish a case or controversy to avoid mootness").

Plaintiffs contend that since the Mayor and Commissioner previously overstepped their authority in issuing these orders, "there is nothing preventing the Defendants from issuing another

---

[15] City of New York, *Emergency Executive Order 251*, https://www.nyc.gov/assets/home/downloads/pdf/executive-orders/2022/eeo-251.pdf (last visited Sept. 20, 2023).

order immediately after this action would be dismissed as moot." (Pls.' Opp'n, at 11, ¶ 16.) While the Court recognizes that, "even if the government withdraws or modifies a COVID restriction in the course of litigation, that does not necessarily moot the case," as long as the plaintiff "remain[s] under a constant threat that government officials will use their power to reinstate the challenged restrictions," *Tandon v. Newsom*, 141 S. Ct. 1294, 1297 (2021) (per curiam) (internal quotation marks and citation omitted), Plaintiffs' argument that it "is not mere speculation that the executive branch is considering further vaccine mandates to address COVID-19, Monkeypox, Polio, or other viruses" (Pls.' Opp'n, at 12) is, in fact, pure speculation, and, particularly with the benefit of hindsight, unfounded.[16]  *See Dark Storm Indus. LLC*, 2021 WL 4538640, at *1 (holding that "[a] defendant satisfies its burden [of demonstrating that a challenge is moot] where it shows that the possibility of recurrence is merely 'speculative'") (citing *Lillbask*, 397 F.3d at 88 (2d Cir. 2005))). Indeed, as courts in this Circuit have found time and again, the City's voluntary cessation of the Key to NYC program rendered claims for injunctive and declaratory relief from that program moot, and no mootness exception—neither "voluntary cessation" nor "capable of repetition yet evading review"—applies.  *See, e.g., Abadi*, 2023 WL 3295949, at *1–2; *Dixon v. De Blasio*, No. 21-2666, 2022 WL 961191 (2d. Cir. Mar. 28, 2022) (granting motion to dismiss appeal of district court's dismissal of motion for preliminary injunction against "Key to NYC" program as moot after the program was rescinded).  During the nearly 18 months since Plaintiffs filed their Amended Complaint in this action, the return to relative normalcy, characterized by the rescission of

---

[16] The Polio vaccine has been required for New York State schoolchildren since 1965.  *See* New York State Department of Health, *School Vaccination Requirements*, https://www.health.ny.gov/prevention/immunization/schools/school_vaccines/ (last visited Sept. 28, 2023); Katie Ehrlich & Clinton Johnson, *Mass Inoculation or: How New York Learned to Stop Worrying and Love the Polio Vaccine*, NYC DEPARTMENT OF RECORDS & INFORMATION SERVICES (MAY 24, 2018), https://www.archives.nyc/blog/2018/5/24/mass-inoculation-or-how-new-york-learned-to-stop-worrying-and-love-the-polio-vaccine (last visited Sept. 20, 2023).

substantially all COVID-19 emergency public health orders like the ones in this case even as additional waves of infection have ebbed and flowed, have only served to make the possibility of recurrence even more remote.  *See Iosilevich*, 2022 WL 19272855, at *12 (finding "plaintiff's barebones contention that the City will reinstitute" the challenged mandates insufficient to create an exception to mootness, where "more than two years after the pandemic began, 'circumstances have changed,' . . . and wholesale rollbacks of loosened COVID-19 rules are increasingly hard to envisage") (citing *Eden, LLC v. Justice,* 36 F.4th 166, 171 (4th Cir. 2022)).  Thus, the Court finds that Defendants have sustained their burden to show that there is neither a "reasonable expectation that the alleged violation will recur" for purposes of the voluntary cessation exception nor a "reasonable expectation that [Plaintiffs] will be subject to the same" action again, for purposes of the capable-of-repetition exception.  *Remauro,* 2022 WL 1525482, at *3–4*; id.* at *3 ("I therefore reject plaintiffs' invitation to apply the voluntary cessation exception based on the mere possibility that defendants' challenged conduct might recur.") (citing *Dark Storm*, 2021 WL 4538640, at *1 ("[P]articularly in view of the mitigation measures that have become available to combat the spread of COVID-19, and the providential infrequency of pandemics, the risk that restrictions [] will recur is only speculative.")).

Finally, while "[t]he availability of either nominal or substantial damages is sufficient to prevent [a] case from becoming moot," *Davis v. Vill. Park II Realty Co.*, 578 F.2d 461, 463 (2d Cir. 1978), as discussed, Plaintiffs do not seek monetary damages of any kind.  In fact, in their opposition brief to the instant motion to dismiss, Plaintiffs state that the Court's decision to grant the injunctive relief they seek would create a means by which they could seek monetary damages. (Pls.' Opp'n, at 10, ¶ 10 ("Should this Court strike down [EEO 317] as unconstitutional, the Plaintiffs would have remedies to seek compensation for the damages that the Defendant's [sic]

caused through multiple other means such as further litigation or arbitration pursuant to their employment contracts.").)  Furthermore, Plaintiffs' request for "other and further relief as the Court deems equitable and just under the circumstances," cannot be construed as a request for monetary damages.  *See Silge v. Merz*, 510 F.3d 157, 160 (2d Cir. 2007) (noting that the Second Circuit has "declined the invitation to use such boilerplate to divine a claim for damages that would overcome problems of mootness" (collecting cases)); *Bagley v. New York State Dep't of Health*, No. 15-CV-4845 (FB) (CLP), 2021 WL 695060, at *2–3 (E.D.N.Y Feb. 23, 2021) (rejecting plaintiff's request that the court read "such other and further relief as the Court deems equitable and just" as a request for money damages or as a basis for amending the complaint to add a claim for money damages).  Plaintiffs' request for "reasonable costs and fees," including attorney's fees, also do not rescue this case from mootness, since Plaintiffs are not a prevailing party.  *See N.Y.S. Fed. of Taxi Drivers, Inc. v. Westchester Cnty. Taxi & Limousine Comm'n*, 272 F.3d 154, 159 (2d Cir. 2001) (dismissing case where substantive claims were moot and thus plaintiff was not a "prevailing party" and its "only interest in continuing litigation . . . [was] the recovery of attorney's fees"); *Lieberman v. Law Sch. Admissions Council, Inc.*, No. 09-CV-5274 (JSR), 2009 WL 3617539, at *1–2 (S.D.N.Y. Nov. 2, 2009) (holding that "a plaintiff's interest in recovering attorney's fees is not itself sufficient to rescue a case from mootness" because plaintiff is not a prevailing party where the "lawsuit brought about a voluntary change in defendant's conduct")).[17]

___

[17] The Court is aware of one case in this Circuit, *62-64 Kenyon St. Hartford, LLC v. City of Hartford*, holding that "[f]ollowing *Davis [v. Vill. Park II Realty Co.]*, a request for even nominal damages or attorneys' fees will ensure the survival of a plaintiff's claim, even when the defendant has ceased the offending action. . . . However, dismissal of an otherwise moot case may be appropriate if the claims for damages lack merit."  No. 16-CV-617 (VAB), 2017 WL 20911, at *5 (D. Conn. Jan. 2, 2017) (citing *Davis v. Vill. Park II Realty Co.*, 578 F.2d at 463).  Notwithstanding the fact that this unreported case is not binding on this Court, the Court notes that the *Davis* court found, after a more fulsome discussion of the impact of "nominal or substantial damages" on mootness, that plaintiffs' claim for attorney's fees was merely "an additional factor

Because the Court concludes that Plaintiffs lack standing to bring this action in federal court and because their challenges to EEO 317 are moot, the Court does not address Defendants' arguments that Plaintiffs' various counts fail to state a claim on which relief may be granted under FRCP 12(b)(6). *See generally Altman v. Bedford Cent. School Dist.*, 245 F.3d 49, 70 (2d Cir. 2001) ("It has long been settled that a federal court has no authority to give opinions upon moot questions . . .") (quoting *Church of Scientology of Ca. v. United States*, 506 U.S. 9, 12 (1992)). "Where, as here, [Defendants] move[] for dismissal under Rule 12(b)(1) . . . as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990) (internal quotation and citation omitted); *Bell v. Hood*, 327 U.S. 678, 682 (1946) (holding that a motion to dismiss for failure to state a claim may be decided only after finding subject matter jurisdiction); *Weisman v. C.I.R.*, 103 F. Supp. 2d 621, 626 n.9 (E.D.N.Y. 2000) (declining to address defendants' 12(b)(6) arguments where 12(b)(1) arguments were successful); *cf. Eastwood v. Molecular Defs. Corp.*, 373 F. Supp. 3d 502, 508 (S.D.N.Y.

---

which prevents this case from becoming moot." *Davis*, 578 F.2d at 463. The former conclusion has become relatively commonplace in this Circuit, while the latter—keeping an otherwise moot case open only for the adjudication of a claim for attorney's fees—is rare and, in light of the precedent mentioned *supra*, seemingly disfavored. Further, the facts of *Davis* are materially different from those in this case. There, plaintiff's retention of counsel to challenge defendant's allegedly unconstitutional eviction proceeding against her caused defendant not to pursue the eviction. The Court found that "*[i]n these circumstances*, the defendants' potential liability for attorney's fees" were a factor in support of preventing mootness. *Id.* at 463–64. Here, in contrast, the case has become moot entirely independently of this litigation, and Plaintiffs, far from being "required" by Defendants' allegedly wrongful conduct to hire a lawyer, filed suit without even resorting to available processes for exempting themselves from any applicable regulation.

2019) (concluding that because plaintiffs did not have standing to assert their federal claims, their state law claims must also be dismissed).

## LEAVE TO AMEND

FRCP 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  Here, because Plaintiffs lack standing, and their claims are otherwise moot, their Amended Complaint should be dismissed without leave to amend, since doing so would be futile.  *Kimmel v. N.Y. State Assembly*, No. 20-CV-1074 (KAM) (ARL), 2020 WL 6273975, at *3 (E.D.N.Y. Oct. 26, 2020) (denying leave to amend where "[a] pleading amendment would not cure plaintiff's standing deficiency"); *Equal Vote Am. Corp. v. Congress*, 397 F. Supp. 3d 503, 512 (S.D.N.Y. 2019) (finding that "[b]ecause Plaintiffs lack standing to sue, amendment would be futile," and denying leave to amend).[18]

---

[18] In reaching this conclusion, the Court has considered the possibility that Plaintiffs theoretically could amend to (1) challenge the Order instead of EEO 317; (2) seek damages for injuries that they allegedly suffered as a result of ConEd's compliance with the Order; and (3) allege that they sought, but were denied, exceptions or accommodations with respect to the Order's requirements.  However, based on the history of this case—including the fact that both the Complaint and Amended Complaint focused solely on EEO 317, that Plaintiffs did not argue in opposition to the instant motion that they were actually challenging the Order, and that Plaintiffs did not allege in the Amended Complaint that they applied for, but were denied, exceptions or accommodations as to the vaccination mandate, despite the Court having specifically pointed out this defect with respect to the original Complaint in its February 4, 2022 decision—the Court has no reason to believe that Plaintiffs can or would so amend their complaint if given yet another opportunity to do so.  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (noting that "[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party"); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) ("Leave to amend, though liberally granted, may properly be denied for . . . repeated failure to cure deficiencies by amendments previously allowed." (internal quotation marks and citation omitted)); *Kyszenia v. Ricoh USA, Inc.*, 583 F. Supp. 3d 350, 371 (E.D.N.Y. 2022) (denying leave to amend where plaintiffs "had notice of deficiencies in their pleadings" but failed to address them in their amended complaint).

24

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims fail for lack of standing and mootness. Defendants' motion to dismiss the Amended Complaint for lack of subject-matter jurisdiction is granted without prejudice.[19]  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

/s/ Pamela K. Chen
Pamela K. Chen
United States District Judge

Dated:  September 30, 2023
        Brooklyn, New York

---

[19] *See Abadi*, 2023 WL 3295949, at *3 n.3 ("Because the Court lacks subject matter jurisdiction on mootness and standing grounds, the amended complaint should be dismissed *without* prejudice." (citing *Katz*, 872 F.3d at 116 (emphasis added))).